STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
FOURTH JUDICIAL DISTRICT COURT

DENNIS B. NELSON,

    Plaintiff,

v.	Case No. D-412-CV-2015-00367
    consolidated with
CITY OF LAS VEGAS,	Case No. D-412-CV-2016-00269

    Defendant.

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff Dennis B. Nelson, by and through his counsel of record Garcia Ives Nowara (Matthew L. Garcia and Jonathan J. Guss) hereby brings this class action complaint for damages. As grounds for this pleading, the Plaintiff states as follows.

### JURISDICTION AND VENUE

1.    Jurisdiction and venue is proper pursuant to common law, NMSA 1978, § 38-3-1(A)(1988), and NMSA 1978, 38-3-1(F)(1988).

2.    At all times material to this Complaint, Mr. Nelson was a resident of San Miguel County in New Mexico.

3.    The acts complained of occurred in San Miguel County.

4.    Defendant City of Las Vegas ("the City") is situated in San Miguel County.

### PARTIES

5.    Mr. Nelson is a resident of the State of New Mexico. Mr. Nelson previously worked as a police officer for the City. Mr. Nelson brings this claim on behalf of himself and all others similarly situated (referred to hereafter as "the Class").

EXHIBIT A

6. Mr. Nelson had been employed as a police officer for the City of Las Vegas. His terms of employment were from July 2008 until November 2011 and again from February 2015 until December 2015.

7. The City is a political subdivision. Liability may be had against the City for the legal violations complained of in this pleading. See e.g. NMSA 1978, § 50-4-21 (2007) (defining all political subdivisions as employers for purposes of the New Mexico Minimum Wage Act); NMSA 1978, § 10-16C-2 (2010) (defining all political subdivisions as employers for purposes of the New Mexico Minimum Wage Act); 29 U.S.C. § 203 (defining employer under the Fair Labor Standards Act as, inter alia, a political subdivision of the state).

8. As an employer, the City is liable for the wrongful conduct of its employees.

## GENERAL ALLEGATIONS

**A.    The City systematically underpays its employees.**

9. The City is responsible for paying its employees in accordance with federal and state law. However, the City failed to meet these responsibilities.

10. For example, the City frequently requires its officers to write incident reports without pay. If officers are busy in the field and cannot complete reports during the course of their shift, officers are obligated to draft these reports off the clock.

11. Mr. Nelson was also frequently required to provide others with access to the City's shooting range. However, Mr. Nelson was never paid for that time.

12. Perhaps most significantly, the City has failed to properly pay officers for overtime.

13. The City has agreed to pay its police officers a shift differential for both the swing shift and during the graveyard shift. During swing shifts, officers are to be paid an additional

2

$0.50 per hour.  Officers working the graveyard shift are to be paid an additional $0.75 per hour.  The swing shift is defined as the time period from 4:00 P.M. until 12:00 A.M. while the graveyard is the time period from 12:00 A.M. until 8:00 A.M.

14.	Per written agreement, all officers are to be paid an amount totaling 1.5 times the applicable pay rate for overtime.

15.	For nearly all periods germane to this lawsuit, the City did not pay any overtime on shift differentials for officers who worked the swing and graveyard shifts.  The City did not begin to pay overtime on the shift differential until September 2015.

16.	Even then, the City did not properly calculate overtime wages to officers who worked the swing and graveyard shifts.  Specifically, in calculating overtime pay for officers working the swing shift and/or the graveyard shift, the City multiplied the pay differential by 1.5 and then multiplied that amount by the number of hours worked.  The proper means for calculating overtime pay, however, is to multiply the total hourly rate, including the differential, by 1.5.

17.	An example provides a useful illustration of how the City's wrongful conduct adversely affected officers.  Consider an officer who is paid $20 per hour and has accumulated eight (8) hours of overtime during graveyard shifts.  That hypothetical officer would be entitled to a shift differential of $0.75 per hour.  The officer would also be entitled to overtime pay.  The City calculated the officers total overtime pay by multiplying $0.75 (shift differential) by 1.5 (overtime rate) and then multiplying that amount 8 (number of hours worked).  The City would then add that amount to the officer's base pay.  Thus, the pay formula utilized by the City for this hypothetical officer would be as follows:

3

**City overtime pay calculation:  $0.75*1.5*8+$160 = $209.00**

The hypothetical officer would receive a total of $209.00.  This means of calculating overtime wages was erroneous.  The proper way to pay officers for overtime was to take the total hourly rate and multiply that number by 1.5 and hours worked.  The correct pay formula for this hypothetical officer is as follows:

**Proper overtime pay calculation:  $20.75*1.5*8 = $249.00**

In this hypothetical, the City's wrongful means of paying officers would deprive its employee of $40.

18.     The City's failure to pay officers in accordance with the applicable legal standards deprived officers of significant pay.

19.     Under information and belief, the City has been underpaying its officers since 1998.

20.     That underpayment has resulted in significant damages to the class.  At any given time, the City typically employs about twenty-one officers, and those officers frequently worked overtime.  Mr. Nelson estimates that he worked between ten (10) to eighteen (18) hours a week of overtime.  Like most officers, this overtime was accrued during shifts requiring a pay differential—i.e. the swing shift and the graveyard shift.  Mr. Nelson was not unique and most other officers accrued overtime similarly.

**B.    Mr. Nelson suffers an adverse employment action for addressing the City's unlawful overtime payment practices.**

21.     On or about December 5, 2015, Mr. Nelson voiced his concerns to the City, including the City attorney, regarding the failure to pay overtime wages in accordance with applicable law.

4

22. After that report, Mr. Nelson was harassed by senior members of the Las Vegas Police Department. Mr. Nelson also complained about that conduct.

23. After addressing these matters with the City, Mr. Nelson was told that there was a pending internal affairs investigation against him. Mr. Nelson was placed on administrative leave on December 9, 2015.

24. Mr. Nelson was never provided with a target letter or timely given any substantive basis for the adverse employment actions taken against him.

25. Because of the City's wrongful conduct, including its adverse employment action against him, Mr. Nelson resigned from his position with the Las Vegas police department.

## CLASS ACTION ALLEGATIONS

26. Mr. Nelson incorporates the preceding paragraphs as though they were fully stated herein.

27. The City, through its employees and divisions, implemented policies and practices that resulted in the systematic underpayment of Las Vegas police officers. These unlawful actions resulted in the following:

   a. Failing to pay officers for time spent writing reports;

   b. Failing to pay officers the full amount owed for hours worked during the swing shift;

   c. Failing to pay officers the full amount owed for hours worked during the graveyard shift;

   d. Systematically underpaying police officers for work performed; and

   e. Failing to pay employees according to written agreement.

28. The City is liable for the acts and omissions of its employees, divisions, departments, and agencies.

29. This matter is properly maintainable as a class action pursuant to Rule 1-023 NMRA.

30. The class is defined as follows:

> All current and former Las Vegas Police Department officers who were paid on an hourly basis and who were employed with the Las Vegas Police Department at any time since January 1, 2007.

31. Excluded from the class are any persons with individual lawsuits arising from the same factual predicate and which are currently pending.

32. The class definition is readily ascertainable, and class members are easily identified.

33. Certification of the class is proper and desirable because there are predominant questions of law and fact common to all members of the class. These common questions include:

   a. Whether the City systematically failed to pay its police officers during the operative class period;

   b. The content and application of the City's wage policies as applied to officers;

   c. Whether the City's payment of overtime wages violated applicable laws;

   d. Whether the City's failure to pay officers for completing reporting obligations violated applicable laws;

   e. Whether the City violated contractual obligations with its employee officers;

   f. The available remedies and damages to class members;

   g. The means for notifying class members that they may have been underpaid; and

      h. The applicability of any affirmative defenses raised by the City in response to these allegations.

34. Certification of the class is desirable and proper because Mr. Nelson's claims are typical of the claims of class members he seeks to represent. Mr. Nelson's claims that the City acts and practices violations applicable law are typical of all class members.

35. The members of the class are so numerous that joinder of all members is impracticable.

36. This action should proceed as a class action pursuant to Rule 1-023(B)(2), because the City has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the class. Mr. Nelson seeks to establish the rights and obligations with respect to the claims at issue in this case and to enjoin the City from continuing to engage in those practices that violate duties and obligations owed to Mr. Nelson and the class. Further, all class members should be notified that they may have been underpaid.

37. This action should also proceed under Rule 1-023(B)(3). The questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As the factual predicate for this Complaint makes plain:

      a. Common or generalized proof will predominate with respect to the essential elements of the claims at issue;

b. The common questions of law or fact that pertain to the class predominate over any individual questions, and any individual issues do not overwhelm the common ones;

c. Any member of the class who has a substantial interest in individually controlling the prosecution of a separate action may exclude themselves from the class upon receipt of notice under Rule 1-023(C)(2).

d. It is desirable to concentrate the litigation of these claims in this forum. The determination of the claims of all members of the class in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation as between the City and the putative class; and

e. The difficulties that may be encountered in the management of a class action in this litigation are reasonably managed, especially when weighed against the virtual impossibility of affording adequate relief to members of the class through numerous separate actions.

## CLASS ACTION CLAIMS FOR RELIEF

### Claim for Relief No. 1: Violations of the New Mexico Minimum Wage Act ("NMMWA"), NMSA 1978, § 50-4-20 *et. seq.*
### (on behalf of Mr. Nelson and all others similarly situated)

38. Mr. Nelson incorporates the preceding paragraphs as though they were fully stated herein.

39. Under the NMMWA, an employer must pay an employee for all work done.

40. By failing to pay officers overtime wages due, the City violated its legal obligations under the NMMWA.

41. Under the NMMWA, an employer must pay hourly employees an hourly rate equal to one-and-one-half times their regularly hourly rate.

42. During their term of their employment with the City, class members who worked overtime were not paid one-and-one-half times their regularly hourly rate.

43. Despite its legal obligations under the NMMWA, the City failed to provide class members with all earned overtime pay to which class members were due.

**Claim for Relief No. 2:  Violations of the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*
(on behalf of Mr. Nelson and all others similarly situated)**

44. Mr. Nelson incorporates the preceding paragraphs as though they were fully stated herein.

45. Under the FLSA, an employer must pay an employee for all work done.

46. By failing to pay employees for writing reports, the City violated its legal obligations under the FLSA.

47. Further, under the FLSA, an employer must pay hourly employees an hourly rate equal to one-and-one-half times their regularly hourly rate.

48. Despite its legal obligations under the FLSA, the City failed to provide class members with all earned overtime pay to which class members were due.

**Claim for Relief No. 3:  Breach of Contract
(on behalf of Mr. Nelson and all others similarly situated)**

49. Mr. Nelson incorporates the preceding paragraphs as though they were fully stated herein.

50. The City and class members entered into an employment contract, whereby class members agreed to work and the City agreed to pay earned wages.

51. This agreement required the City to pay for all hours worked, including all earned wages and overtime.

52. All class members worked competently, and the performed their obligations under this employment agreement.

53. The City failed to honor its obligations under the applicable agreement.

54. Class members suffered damages as a result of the City's contractual breaches in the form of underpayment of wages.

### MR. NELSON'S INDIVIDUAL CLAIMS FOR RELIEF
### Claim for Relief No. 4: Violations of the Whistleblower Protection Act ("WPA") NMSA 1978, § 10-16C-1 *et. seq.*

55. Mr. Nelson incorporates the preceding paragraphs as though they were fully stated herein.

56. As described above, Mr. Nelson reported legal and policy violations that he believed were improper.

57. Those violations—including the failure to properly pay police officers for work done—constitutes malfeasance by public employees of which Mr. Nelson reported to public employers and/or third parties.

58. Because Mr. Nelson reported legal and policy violations, the City staff took adverse employment actions against him.

59. The City is a public employer as defined by § 10-16C-2 of the WPA.

60. The City is responsible for damages incurred by Mr. Nelson.

61. Pursuant to the WPA, Mr. Nelson is entitled to actual damages, reinstatement of his position with the same seniority status that he would have had but for the violation, two times

the amount of back pay with interest on the back pay and compensation for any special damages sustained.  Further, the City is responsible for the litigation costs and fees incurred in this action.

### Claim for Relief No. 5:  Failure to Pay Wages and Retaliation in Contravention of the NMMWA, NMSA 1978, § 50-4-26.1 (2009)

62. Mr. Nelson incorporates the preceding paragraphs as though they were fully stated herein.

63. Because Mr. Nelson was a shooting instructor for the police department, he had keys to the shooting range the City utilized.

64. Mr. Nelson was frequently required to travel to the shooting range and provide others access to that property.  He was not compensated for that work.

65. Further, and as described above, the City and its employees took adverse employment actions against Mr. Nelson for reporting underpayment of overtime wages.  § 50-4-26.1 of the NMMWA prohibits an employer from retaliating against employees for reporting violations of the act.  Specifically, that provision states: "It is a violation of the Minimum Wage Act for an employer or any other person to discharge, demote, deny promotion to or in any other way discriminate against a person in the terms or conditions of employment in retaliation for the person asserting a claim or right pursuant to the Minimum Wage Act or assisting another person to do so or for informing another person about employment rights or other rights provided by law."

66. Mr. Nelson suffered damages as a result of the City's retaliatory conduct.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff on his own and on behalf of the Class prays for judgment, injunctive, and declaratory relief against the City as follows:

A. Certifying this action as a class action pursuant to Rule 23(a) and Rule 23(b)(2) and Rule 23(b)(3);

B. Awarding compensatory damages to Mr. Nelson and the class for the damages done to them by the City in an amount to be proven at trial;

C. Granting a declaratory judgment that establishes the rights and obligations of the parties with respect to the claims set forth herein;

D. Granting injunctive relief as may be deemed proper by the Court to require the City to desist in the wrongful actions described herein;

E. Awarding Mr. Nelson and the class their costs and expenses incurred in this action, including reasonable attorneys' fees, experts' fees, and costs;

F. Awarding all available damages and remedies to Mr. Nelson for his individual claims including those founded under the WPA and the NMMWA; and

G. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Matthew L. Garcia
Jonathan J. Guss
Garcia Ives Nowara
924 Second Street NW, Suite A
Albuquerque, NM 87102
Ph:  (505) 899-1030
e-mail:  matt@ginlawfirm.com
             jon@ginlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2017, I filed the foregoing through the New Mexico Electronic Filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

_____
Matthew L. Garcia